**UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division**

In re:

BOBBIE U. VARDAN,
    Debtor.

WELLS FARGO BANK, N.A. AS
SERVICING AGENT FOR BANK
OF AMERICA, N.A.,
    Movant

vs.

BOBBIE UPASNA VARDAN,
    Respondent

Case No. 17-13848-KHK
(Chapter 11)

Contested Matter

## **MEMORANDUM OPINION**

The matter to be decided by this Court is whether Wells Fargo Bank, NA as Servicing Agent for Bank of America, N.A. should be granted *in rem* relief from the automatic stay with respect to real property of the debtor, Bobbie U. Vardan. The request for relief *in rem* is based on the allegation that the debtor and her husband, Sandeep Vardan, have filed successive bankruptcies, which have repeatedly delayed and hindered this secured creditor's efforts to foreclose on the property. The debtor alleges the *in rem* relief the bank is seeking is not justified and asks that her husband's prior cases not be viewed as evidence of a lack of good faith in filing this case. An evidentiary hearing to determine the rights of the parties was conducted on November 19, 2018. At the conclusion of the hearing, the Court took the matter under advisement. For the reasons explained below, the Court finds in favor of Wells Fargo and grants its request for *in rem* relief from the automatic stay.

**Parties and Procedural History**

Bobbie Vardan ("Mrs. Vardan"), an attorney who practices before this Court filed a voluntary petition for relief under Chapter 11 of the Bankruptcy Code on November 13, 2017. She and her husband, Dr. Vardan are co-owners of property located at 3409 Meyer Woods Lane, Fairfax, VA 22033 ("the Property"). Dr. Sandeep Vardan ("Dr. Vardan") is a cardiologist and the husband of Bobbie Vardan. His father, Dr. Suman Vardan is also a cardiologist ("Dr. Suman Vardan") and both doctors have had bankruptcy cases in this Court.

Soon after the case was filed, Wells Fargo Bank, N.A. as servicing agent for Bank of America, N.A. ("Wells Fargo") filed a Motion for *in rem* Relief from Stay in order to enforce its rights to foreclose on the Property. As grounds for relief the creditor alleged that the debtor and her husband owed $123,632.07 in arrears on their mortgage loan and that they were abusing the bankruptcy process by filing successive cases to avoid foreclosure. Wells Fargo ("WF") Exh. 16 (Case No. 17-13848, *filed* on November 13, 2017) (See also Docket No. 12).

On March 30, 2018, the U.S. Trustee filed a Motion to Convert or Dismiss Mrs. Vardan's case. Id. at Docket No. 60. ("Motion for Relief from Stay"). One week later, she filed her Disclosure Statement and Plan. At the conclusion of the hearing on approval of the Disclosure Statement, the Court ruled that the Statement could not be approved because of numerous deficiencies. The Court also found that a feasible plan could not be proposed in this case and dismissed the bankruptcy *sua sponte*.

Final hearings on the motions for relief from stay filed in the case were conducted on May 23, 2018. The debtor failed to appear at the hearings. Therefore, based on the pleadings and arguments of Counsel who appeared on behalf Wells Fargo and Wilmington Savings Fund Society, FSB, d/b/a Christiana Trust, not individually but as trustee for Hilldale Trust

("Wilmington"), the Court granted *in rem* relief to both creditors. Thereafter, the debtor filed a Motion to Reconsider the Order granting relief; however, after proper notice, the motion was dismissed for failure to prosecute the matter. <u>Id.</u> at Docket Nos. 95, 116 and 118 (<u>See</u> "Motion to Reconsider"; "Notice of Failure to Prosecute"; <u>See also</u> "Order Dismissing Pleading for Failure to Prosecute").

Mrs. Vardan never filed a Motion to Stay the Order for relief pending an appeal; however, she appealed both Orders granting *in rem* relief. On November 5, 2018, the District Court entered an Order vacating the Orders granting relief, consolidated the matters and remanded the case to the bankruptcy court for further proceedings. Subsequent to entry of the Order remanding the case, Wilmington withdrew its motion for relief, thus obviating the need for further proceedings on that matter. A hearing on the motion filed by Wells Fargo was conducted on November 19, 2018. Present at the hearing were Jeffrey L. Tarkenton and Johnie R. Muncy, Counsel for Wells Fargo, Timothy J. McGary, Counsel for GREI, LLC and Bobbie Vardan, *pro se*.

## **Findings of Facts**

The Property at the center of this controversy has been affected by four bankruptcies filed by the debtor or members of her family since March 2016. The Court examined the events occurring before, during and after each case to determine whether a scheme existed to frustrate the efforts of Wells Fargo to enforce its rights against the Property.

*First Bankruptcy of Sandeep Vardan*

Dr. Vardan filed Case No. 16-70362 *pro se*, requesting relief under Chapter 11 of the Bankruptcy Code on March 22, 2016, in the Western District of Virginia, Roanoke Division. WF

3.

Exh. 3 (Case No. 16-70362, *filed* on March 22, 2016). After the case was filed, Mrs. Vardan filed a Notice of Entry of Appearance on behalf of Dr. Vardan, along with his Schedules I and J and a declaration regarding the accuracy of the schedules that was not signed by the debtor. Id. at Docket Nos. 22-31.

At the § 341 meeting of creditors conducted by the U.S. Trustee, Dr. Vardan's examination under oath revealed several errors in his statements and schedules. At the end of the meeting he was instructed to amend the documents and to file a signed declaration of their accuracy under penalty of perjury. Id. at Docket No. 52 ("Motion to Convert Case").

On July 22, 2017, the U.S. Trustee filed an Emergency Motion to convert the bankruptcy to a case under chapter 7 on the basis that Dr. Vardan had breached his fiduciary duties as a Debtor-in-Possession. This occurred after Mrs. Vardan disclosed that the debtor could not provide the U.S. Trustee with evidence of closure of his pre-petition bank accounts. He no longer had access to the accounts because he had transferred the assets of his sole proprietorship, including control of his business bank accounts, to his father, Dr. Suman Vardan. Id. at Docket. No. 58. At the conclusion of a hearing conducted on July 28, 2016, the Court found adequate cause existed to convert the case to a Chapter 7 for several reasons including:

1. Failure of the debtor to file amended schedules to add assets worth one million dollars owed to the Debtor;

2. Failure to comply with Bankruptcy Rule 4008 which requires the debtor to swear under penalty of perjury that his schedules are true and correct;

3. Gross mismanagement by the debtor causing a substantial and continuing loss to or diminution of the estate as evidenced by $132,000 in losses within 4 months;

4. The debtor's execution of a transfer of estate assets post-petition without the Court's knowledge or authorization;

5.  Failure of the debtor and his Counsel to understand and acknowledge that the assets and liabilities of the debtor's sole proprietorship interest in his company called CardioMed PLLC were assets of the bankruptcy estate and;

6.  The debtor's admission that he could not advance his case without experienced bankruptcy Counsel, but that he had no funds to retain Counsel. Transcript of Record at 135-137, (Case No. 16-70362).

On September 30, 2016, Bank of America filed a Motion for Relief from Stay with respect to the subject Property alleging that no mortgage payments had been made since before the bankruptcy had been filed. Id. at Docket No. 86. After the Chapter 7 trustee filed his report indicating there were no assets in the case, an Order granting the bank relief from the stay was entered on October 28, 2016. Id. at Docket Nos. 93 and 94.

The following month, the U.S. Trustee filed a Complaint to Deny Discharge in the case. Id. at Docket No. 106. In his Answer, Dr. Vardan pled as an affirmative defense that the U.S. Trustee's allegations regarding the unauthorized transfer of estate assets was baseless because Dr. Suman Vardan had owned an equitable interest in the debtor's business assets long before the bankruptcy petition had been filed. Id. at Docket No. 109. Rather than mounting a defense to the Complaint, the debtor moved to waive his discharge and on August 17, 2017, the Court entered an Order Approving Waiver of Discharge. Id. at Docket Nos. 122 and 123. The adversary proceeding and the bankruptcy case were closed on September 6, 2017. Id. at Docket Nos. 128 and 129.

*Second Bankruptcy of Sandeep Vardan*

On August 28, 2017, before his prior case was closed, Dr. Vardan filed Case No. 17-12912 *pro se* in the Eastern District of Virginia, Alexandria Division at 12:08 p.m. WF Exh. 12 (Case No. 17-12912, *filed* on August 28, 2017). The filing of this petition caused the cancellation

5.

of a foreclosure sale scheduled later that day at 1:30 pm. WF Exh. 11("Notice of Foreclosure to be held on August 28, 2017").

The petition, schedules and statements in the second case differed from those filed in the first case. The second set of documents disclosed the debtor's business interest in CardioMed PLLC and the transfer of his interest in that company to Dr. Suman Vardan. WF Exh. 12 at Docket No. 1. The Statement of Financial Affairs in the second case indicated that, although the transfer to the debtor's father occurred on December 1, 2011, CardioMed was not registered as a PLLC in Dr. Suman Vardan's name until 2016. Id.

On September 25, 2017, the Court conducted a hearing on an Order issued to the debtor to appear and show cause why his case should not be dismissed with prejudice. At the hearing, Dr. Vardan testified that he filed the first case because of an impending foreclosure. WF Exh. 13 (Transcript of Hearing at 13:5-7, Case No. 17-12912) When asked how his financial condition had changed between the time he filed his first case and the case before the Court, he replied that the plan to expand the business he transferred to his father was continuing to develop. He contended that his father planned to borrow $500,000 to finance the expansion and once the expansion was complete, he would become his father's employee. Tr. at 13-14. Dr. Vardan acknowledged that the Schedules I and J filed in this case indicated monthly income of -$3,885 despite monthly family contributions of $10,000. Tr. at 8:13-15.

At the conclusion of the hearing, the Court determined that the case was filed in subjective bad faith because there was no genuine belief that it could be successful within a reasonable period of time. It also found that the case was objectively futile for the following reasons:

6.

1. There was no evidence before the Court regarding the ability of family members to make the $10,000 monthly contributions to a plan of reorganization on an ongoing basis;

2. The ability of Dr. Vardan and his father to successfully expand their business was speculative and could not be relied on to support a plan and;

3. The debtor was ineligible to discharge debts in this case because he had waived his right to discharge the same debts in his prior case.

The Court dismissed the case with prejudice to filing a bankruptcy case in any bankruptcy court in the United States for one year from the entry of the Order. The Order dismissing the case was entered on September 28, 2017. WF Exh. 14 ("Order Dismissing Case with Prejudice").

*Bankruptcy of Bobbie Vardan*

On November 13, 2017 at 12:48 pm., Mrs. Vardan filed the instant case. WF Exh. 17 (Case No. 17-13848). This filing caused the cancellation of a foreclosure sale of the Property scheduled that afternoon at 1:00 pm. WF Exh. 15 ("Notice of Foreclosure to be held on November 13, 2017").

Wells Fargo filed its Motion for Relief from the Automatic Stay in the case on November 17, 2017, alleging the loan was contractually due for the April 2016 monthly payment with substantial arrears. WF Exh. 16 (Case No. 17-13848, Docket No. 12)("Motion for Relief from Stay"). The day before the motion was to be heard, Mrs. Vardan filed a Response to the motion claiming *in rem* relief was not justified. Id. at Docket No. 25 ("Debtor's Response to Motion for Relief from Stay"). She filed a Supplemental Response to her Response on January 9, 2018, the day before the next hearing on the motion for relief. Id. at Docket No. 40.

The Court gave the debtor an oral deadline to file her Disclosure Statement and Plan early on in the case. Thereafter, Mrs. Vardan filed two motions to extend the deadlines on the days the documents were due. The notice accompanying the motions to extend requested a new deadline of December 31, 2014. The notice was confusing because creditors did not know if Mrs. Vardan was requesting that the deadline be extended to the end of 2018, or some other time. The issue was resolved when, on March 30, 2018, the U.S. Trustee filed a Notice and Motion to Convert Case to Chapter 7 or Dismiss. Id. at Docket Nos. 60 and 67. A few days later, the debtor filed her Disclosure Statement and Plan. Id. at Docket Nos. 63 and 64.

The U.S. Trustee's overriding objection to the Disclosure Statement was the lack of plan feasibility. He relied on In re Quigley Co., 377 B.R. 110, 115 (Bankr. S.D.N.Y. 2007) and argued that the plan was "patently unconfirmable" because any plan proposed in the case would depend almost entirely on the financial contributions of family members who were not subject to the Court's jurisdiction. Id. at Docket No. 78. In his objection the U.S. Trustee specifically argued that the debtor had offered no proof that the family contributions would be forthcoming. Id. The U.S. Trustee also objected to the Disclosure Statement on other grounds that included failure to: (1) address the first priority rule; (2) state the amount of administrative expenses to be paid; and (3) put unsecured creditors on notice of the amount they would be paid and when they would receive payment.

At the hearing on the approval of the Disclosure Statement, the debtor failed to produce any evidence of her family's ability or willingness to contribute to a plan for five years. The Monthly Report of Debtor in Possession for the Period March 1, 2018 to March 31, 2018 filed by Mrs. Vardan disclosed that the debtor had an overall net income of $604.08 from the inception of her case to the end of the reporting period. WF Exh. 16 ("The Monthly Report of Debtor in

Possession for the Period March 1, 2018 to March 31, 2018"). The Court determined that without evidence to support feasibility, any plan proposed by the debtor would be highly speculative at best. The Court also determined that the debtor was not producing sufficient income to pay for the professional assistance she would need to prepare and file tax returns due after the case was filed or to pay taxes as they became due. Upon concluding that a feasible plan could not be proposed, the Court denied the motion to approve the Disclosure Statement and dismissed the case *sua sponte*. Id. at Docket No. 87. The Order of Dismissal without prejudice was entered on May 23, 2018. Id.

Five days after her case was dismissed, Mrs. Vardan and her husband signed a Gift Deed conveying a 20% undivided interest in the Property to Dr. Suman Vardan and his wife, Asha Vardan. WF Exh. 28 ("Gift Deed from Sandeep Vardan and Bobbie Upasna Vardan to Suman Vardan and Asha Vardan, dated May 28, 2018 and recorded on September 10, 2018").

*Bankruptcy of Suman Vardan*

On September 10, 2018 the following events took place:

1. At 7:51 am., Mrs. Vardan filed a Chapter 13 petition in bankruptcy in the Eastern District of Virginia on behalf of her father-in-law Dr. Suman Vardan; WF Exh. 29 (Case No. 18-13062).

2. At 8:49 am., the Gift Deed previously signed on May 28, 2018 was recorded in the Fairfax County Land Records; WF Exh. 28 ("Gift Deed").

3. At 8:56 am., Mrs. Vardan sent a Notice of Bankruptcy Case Filing to Wells Fargo by email demanding a halt to the foreclosure of the Property scheduled for that afternoon and; Debtor's Ex. 1 ("Notice")

4. On or about 1:00 pm, Wells Fargo conducted a foreclosure sale of the Property.[1] GREI Exh. 1 ("Deed of Foreclosure").

---

[1] In reliance on the *in rem* Order for relief issued by this Court, Wells Fargo conducted the sale and a Deed of Foreclosure was issued to GREI, LLC. Timothy McGary, Counsel for GREI, LLC made an appearance at the

When Dr. Suman Vardan failed to timely file his schedules, statements and a plan, the Court set hearings to determine whether or not the case should not be dismissed because of the deficiencies and whether or not the case was filed in good faith. WF Exh. 29 (Case No. 18-13062)( See Docket Nos. 16 and 17). On November 15, 2018, at a hearing conducted on both matters, Mrs. Vardan explained that the schedules were never filed because, after the foreclosure occurred despite the imposition of the stay, the debtor decided not to continue in bankruptcy even though he had other debts. Id. at Docket No. 27 (See also Transcript of Hearing, at 2-4). Dr. Suman Vardan made a statement on the record confirming that the bankruptcy was filed to stop a foreclosure, but since the foreclosure sale had been executed, he wanted to have his case dismissed without prejudice. Tr. at 14-15.

Mrs. Vardan confirmed that she and her husband transferred an interest in the Property to the elder Vardans five days after her bankruptcy case was dismissed and that the deed was not recorded until the day she filed her father-in-law's bankruptcy. Tr. at 5:19 -7:1-9. She explained that Dr. Suman Vardan and his wife had lived in and maintained the house for many years and considered it their home. They had also given their son more than $1,000,000 during that period, in part, to help pay the mortgage on this and other properties. Mrs. Vardan contended that the Gift Deed simply memorialized the understanding between father and son that Dr. Suman Vardan and his wife had an equitable interest in the Property. Tr. at 8:18-10.

Judge Kenney rejected the idea that Dr. Suman Vardan's generosity translated into an equitable interest in the Property because no evidence was presented to support that contention. Tr. at 34:19-35:1. He also found that the debtor had been convinced by Dr. and Mrs. Vardan to

---

hearing and asked the Court to issue orders regarding the validity of the foreclosure sale. The Court declined to address the request as the matter was not properly before the Court.

file a bankruptcy that he did not need for the sole purpose of shielding the Property of his son and daughter-in-law from foreclosure. He concluded that the case was not filed in good faith and dismissed it without prejudice to Dr. Suman Vardan who, by all accounts, had excellent credit prior to his bankruptcy. Tr. at 35.

## Conclusions of Law

A bankruptcy court "shall" grant relief from the automatic stay "for cause, including the lack of adequate protection of an interest in property of such party in interest." 11 U.S.C. § 362(d)(1). The bankruptcy court "shall" also grant relief from the automatic stay "with respect to a stay of an act against real property . . . by a creditor whose claim is secured by an interest in such real property, if the Court finds that the filing of the petition was part of a scheme to delay, hinder, or defraud creditors that involved . . . multiple bankruptcy filings affecting such real property." 11 U.S.C. § 362(d)(4). The Code provides no definition of what constitutes "cause", therefore courts must determine when discretionary relief if appropriate on a case-by-case basis. See In re Robbins, 964 F.2d 342, 345 (4th. Cir. 1992) (quoting In re MacDonald, 755 R.2d 715, 717 (9th. Cir. 1985).

The moving party under section 362(d) has the initial burden of establishing a prima facie case; "[o]nce that has been accomplished, however, the ultimate burden of proof rests upon the Debtor to show a lack of cause to grant" the motion for relief from stay. Unnamed Citizens A Thru E and Certain Minor Children v. White (In re White), 410 B.R. 195, 201 (Bankr. W.D. Va. 2008). Under § 362(g), the movant "has the burden of proof on the issue of the debtor's equity in property" and the "party opposing such relief has the burden of proof on all other issues." 11 U.S.C. § 362(g).

11.

In the instant case, Wells Fargo does not dispute that the debtor and her husband may have equity in the Property. Its grievance is that it lacks adequate protection because it received no payments from the Vardans on this debt between the time Dr. Vardan filed his first bankruptcy on March 22, 2016 and the day Mrs. Vardan filed her case on November 13, 2017. The lack of adequate protection under § 362(d)(4) may be shown where the debtor has a history of failing to make payments under a promissory note or bankruptcy plan. "[O]nce a creditor establishes a history of failing to make payments, the burden then shifts to the debtor to show why automatic relief should not be granted." In re McCullough, 495 B.R. 692, 695. (W.D.N.C. 2013). Mrs. Vardan has not refuted the allegation regarding the arrears in the Motion for Relief, therefore Wells Fargo has satisfied its initial burden of establishing a lack of adequate protection. Moreover, in her Supplemental Response to Wells Fargo's motion, the debtor proffered her intention to keep current on the mortgage payments due after her case was filed; however, the monthly operating reports she filed indicate only one payment to this creditor was made post-petition.

On close examination, it appears that the Vardan bankruptcies failed because of the intentional actions or inactions of Dr. Vardan or Mrs. Vardan, or both. The Fourth Circuit has stated: [W]e hold that a bankruptcy court may dismiss such a petition for want of good faith in its filing, but only with great caution and upon supportable findings both of the objective futility of any possible reorganization and the subjective bad faith of the petitioner in invoking this form of bankruptcy protection. Carolin Corp. v. Miller, 886 F.2d 693, 694 (4th Cir.1989). Dr. Vardan admitted he filed his first Chapter 11 case to avoid a foreclosure. His reorganization was clearly not feasible because of a lack of funding and an inability or unwillingness on the part of the debtor to satisfactorily perform his fiduciary duties as a Debtor-in-Possession. His bankruptcy

was converted to a case under Chapter 7 because of the dissipation of estate assets and because he executed a transfer of some of those assets without the approval of the Court. When the U.S. Trustee made accusations of wrongdoing against the debtor that appeared sufficient to support a denial of discharge, Mr. Vardan chose to avoid defending himself against those allegations by waiving his discharge. Essentially, when it appeared he might be forced out of bankruptcy, he decided to skip the trial and exit the case quickly by waiving his discharge.

When the next foreclosure loomed, in an effort to avoid the scrutiny of the bankruptcy court in the Western District of Virginia where he lived and worked, Dr. Vardan filed a second Chapter 11 bankruptcy in the Eastern District of Virginia before the previous case was closed *and* despite his inability to receive a discharge of his debts. Mrs. Vardan argued that she had nothing to do with this *pro se* filing by her husband, but whether or not she filed the case is immaterial. She knew about the bankruptcy and she benefited from the stay as long as her husband's cases were pending. Dr. Vardan's second case was justifiably dismissed with prejudice for disobeying an order of the Court.

In response to the next threat of foreclosure, Mrs. Vardan filed a Chapter 11 on her own behalf. The case proceeded until it became obvious that she would not or could not produce evidence to show how a plan could be funded. The case was dismissed because of the debtor's failure to perform her obligations under the Bankruptcy Code as a Debtor-in-Possession; however, she and her husband still received the benefit of the protection provided by the stay for several months.

The debtor's actions after this case was dismissed resolve any possible doubt about her motives, for five days after the dismissal, she and her husband signed a Gift Deed, transferring an interest in their Property to Dr. Vardan's parents. Four months later, on the morning of the

13.

next foreclosure sale, Mrs. Vardan filed a bankruptcy on behalf of her father-in-law; then Dr. Vardan recorded the Gift Deed, and moments later, Mrs. Vardan sent notice of these events to Wells Fargo. These actions represent the very behavior that §362(d)(4) was enacted to prevent.

Mrs. Vardan presents several arguments in support of her contention that *in rem* relief is not justified. First, she argues that her husband's cases should not be held against her. She contends that the Court should limit its designation of a serial filer to an individual who has filed several cases and has a history of not pursuing those cases. This definition has no basis in the law. The Bankruptcy Code does not provide a definition of a "serial filer". Yet, § 362(d)(4) sets out the behavior that describes a serial filer and provides that such behavior will result in forfeiture of the protection of the automatic stay. It follows, therefore that, if two individuals collude to deprive a mortgage creditor of its right to foreclose on Property by strategically timing the filing of one bankruptcy after another, then those individuals should lose the protection of the stay.

The Court acknowledges that Dr. and Mrs. Vardan tried to keep their cases open for as long as possible; however, the Court is not convinced that the Vardans ever intended to bring the debt owed to Wells Fargo current through bankruptcy. It is well established that Debtors rarely give direct evidence of fraudulent intent; however, intent can be proven by circumstantial evidence or by inferences derived from a debtor's course of conduct. See generally In re Hunter, 535 B.R. 203 (Bankr. N.D. Ohio 2015); In re Hagarty, 400 B.R. 332 (Bankr. D. Mass. 2008); In re Friedberg, 516 B.R. 450 (Bankr. D. Conn. 2014); In re Slocombe, 344 B.R. 529 (Bankr. W.D. Mic. 2006); In re Libermann, 375 B.R. 450 (Bankr. N. D. Ill. 2007).

In Dr. Vardan's case, the very act of using his parents' address to file a petition in this District resulted in the appearance of evading the stain of his previous case. Also, he offered no

14.

evidence to support a finding of a change in his financial circumstances between the dismissal of his first case and the beginning of the second case. The only value he derived from filing his second case was the protection of the stay – in other words, the goal was to hinder and delay Wells Fargo's right to foreclose and he achieved that goal if only for a few days.

Mrs. Vardan's bankruptcy might have survived had she proceeded in a manner that was consistent with a true desire to rehabilitate her finances. But that was not the case. Instead, she repeatedly filed documents and pleadings the day before or on the morning of hearings and she requested multiple continuances and extensions and often set goals that were never achieved. Moreover, her demeanor was not in keeping with that of an honest debtor. In Court hearings, her evasive and unresponsive answers under direct and cross-examination appeared consistent with the behavior of someone whose goal was to hinder and delay the process regardless of the success or failure of her case.

Second, Mrs. Vardan argues that between the dismissal of her husband's second bankruptcy and the filing of her petition, the couple experienced a change in circumstances that justified a third filing. As proof, she proffered that because of their new employment, she could afford to fund a Chapter 11 plan at the beginning of 2018; however, the Monthly Reports of Debtor in Possession never disclosed this income and she never produced evidence of her new employment or her husband's employment. Nor did she produce evidence of cash on hand, or rental income that she claimed would be available to fund her plan.

Next, Mrs. Vardan contends that as a *pro se* debtor, she was entitled to receive certain notices as described in Roseboro v. Garrison, 528 F.2d 309 (4th. Cir. 1975). She argues that Wells Fargo is not entitled to the relief it seeks because it failed to provide her with the "Roseboro" notices regarding her right to file a responsive pleading to the motion for relief and

15.

that her failure to respond to the motion might result in the entry of an order lifting the stay. This is simply not the case. The notices referred to are incorporated in Official Form 420A - Notice of Motion that creditors must use in accordance with Local Bankruptcy Rule 9013-1(M). In the instant case, Wells Fargo used Official Form 420A and the appropriate notices appear on the first page of its motion for relief. Therefore, Mrs. Vardan received proper notice of the motion.

The debtor argues that Wells Fargo also failed to provide accountings she requested; however, none of the cases cited in her Supplemental Response to support this argument are applicable in this case. WF Exh. 16 (Case No. 17-13848) (See Docket No. 25 p. 5). Moreover, the supporting documents attached to the Proof of Claim 4-1 filed by Wells Fargo clearly provides a sufficient accounting to the debtor on pages 4 and 5.

The Court dismisses Mrs. Vardan's contention that Wells Fargo did not provide mandatory financial disclosures as required by Local Bankruptcy Rule 7007-1 because that Rule has been repealed.

Finally, Mrs. Vardan argues that Wells Fargo failed to notify the co-debtor of the motion for relief. She contends that the lack of notice to Dr. Vardan overrides the creditor's right to pursue its claim. The Court disagrees. Although co-debtor stay provisions are included in Chapters 12 and 13, Chapter 11 of the Bankruptcy Code does not contain a co-debtor stay provision and the Court declines to exercise its authority under § 105 of the Code to invoke one in this case.

Based on a review of the bankruptcies filed by the Vardan family, the pleadings filed in their cases, statements made by the debtors in hearings, and arguments of Counsel, the Court finds that Mrs. Vardan knew that the filing of these cases would result in an undue delay to the mortgage creditor. The Court further finds that the filings were made for the specific purpose of

16.

causing such delay. For these reasons, the Court concludes, based on Mrs. Vardan's history of actions to delay the creditor secured by her real Property, that relief under § 362(d)(4) is warranted and appropriate. Accordingly, the motion for *in rem* relief filed by Wells Fargo shall be granted.

    The Court will enter a separate Order consistent with the findings and conclusions contained in this Memorandum Opinion.

Date: Nov 30 2018

/s/ Klinette Kindred
Klinette H. Kindred
United States Bankruptcy Judge

E.O.D. Nov 30 2018